UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. CARMODY, | ) | CIVIL ACTION NO. 4:19-CV-1745 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff William J. Carmody, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") terminating Plaintiff's disability insurance benefits. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision is AFFIRMED.

II.    BACKGROUND & PROCEDURAL HISTORY

On November 3, 2008, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 195; Doc. 14-5, p. 2). In his application, Plaintiff alleged he became disabled as of March 15, 2007, due to major depressive disorder. *Id.* On March 8, 2009, Plaintiff was notified that he became disabled under the Social Security Administration's rules beginning on October 17, 2008. (Admin. Tr. 121; Doc. 14-4, p. 2).[1]

On July 8, 2014, the status of Plaintiff's disability was reviewed, and it was found that Plaintiff's benefits should continue. (Admin. Tr. 15; Doc. 14-2, p. 16).

In early November 2016, the status of Plaintiff's disability was reviewed a second time. (Admin. Tr. 15; Doc. 14-2, p. 16); (Admin. Tr. 105-120; Doc. 14-3, pp. 4-19). On November 14, 2016, Plaintiff's benefits were terminated. (Admin. Tr. 130-132; Doc. 14-4, pp. 11-13).

On November 16, 2016, December 13, 2016 and April 6, 2017, Plaintiff requested reconsideration of the initial decision terminating his benefits. (Admin. 133-135; Doc. 14-4, pp. 14-16). On September 22, 2017, in connection with

---

[1] In the ALJ's decision terminating Plaintiff's benefits, he reports that Plaintiff was awarded benefits in a determination dated March 14, 2009, beginning September 1, 2008. (Admin. Tr. 15; Doc. 14-2, p. 16). The decision awarding benefits was not included in the administrative record provided to this Court, and these dates do not correspond to the dates provided in the Notice of Award. However, this discrepancy is not relevant to our review.

Plaintiff's requests for reconsideration, a hearing was held. (Admin. Tr. 136; Doc. 14-4, p. 17). On November 21, 2017, the initial decision terminating Plaintiff's benefits was upheld. (Admin. Tr. 159-161; Doc. 14-4, pp. 40-42) (notice of reconsideration); (Admin. Tr. 148-158; Doc. 14-4, pp. 29-39) (hearing officer's decision).

On December 5, 2017, Plaintiff requested an ALJ hearing. (Admin. Tr. 162; Doc. 14-4, p. 43). On October 22, 2018, Plaintiff (assisted by counsel), appeared and testified during an administrative hearing before Administrative Law Judge Richard Zack (the "ALJ"). Vocational expert Carolyn E. Rutherford also appeared and testified. (Admin. Tr. 15; Doc. 14-2, p. 16). On November 15, 2018, the ALJ issued a decision terminating Plaintiff's disability benefits. (Admin. Tr. 15-25; Doc. 14-2, pp. 16-26).

On November 19, 2018, November 20, 2018 and January 10, 2019, Plaintiff requested review of the ALJ's decision terminating his benefits. (Admin. Tr. 185-194; Doc. 14-4, pp. 66-75). On August 15, 2019, the Appeals Council denied the requests for review. (Admin. Tr. 1; Doc. 14-2, p. 2).

On October 7, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision terminating Plaintiff's benefits is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court reverse the ALJ's

decision and award benefits, or in the alternative, remand this matter for a new administrative hearing. *Id*.

On December 6, 2019, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 7, ¶ 8). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8). On June 3, 2020, the Commissioner filed a new certified transcript of the administrative proceedings because the initial certified transcript was not complete. (Doc. 14).

Plaintiff's Brief (Doc. 11) and the Commissioner's Brief (Doc. 12) have been filed.  Plaintiff did not file a reply. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination

as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.  STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE EIGHT-STEP EVALUATION PROCESS FOR CONTINUING DISABILITY REVIEW

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

After a claimant receives disability benefits, his or her entitlement to continued benefits may be reviewed periodically. During this evaluation, the Social

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on November 15, 2018.

Security Administration may find that the claimant is no longer entitled to benefits. 42 U.S.C. § 432(f). A key part of this analysis involves comparing the severity of the impairment at the time of the most favorable recent disability determination with the current severity of that impairment. 20 C.F.R. § 404.1594(b)(7), (c)(1). In doing so, an ALJ uses an eight-step process. 20 C.F.R. § 404.1594(f).

At step one of this process, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).

At step two of this process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1594(f)(2). If the ALJ finds that the claimant has a listed impairment at step two, the claimant's disability continues. *Id.* If the ALJ finds that a claimant does not have a listed impairment at step two, the ALJ proceeds to step three.

At step three, the ALJ determines whether "medical improvement" occurred. 20 C.F.R. § 404.1594(f)(3); *see also* 20 C.F.R. § 404.1594(b)(1) (defining "medical improvement" and providing examples). If the ALJ finds that medical improvement occurred, the ALJ proceeds to step four. 20 C.F.R. § 404.1594(f)(3). If no medical improvement occurred, the ALJ proceeds to step five. *Id.*

At step four, the ALJ determines whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4); *see also* 20 C.F.R. §

404.1594(b)(2) (defining medical improvement not related to the ability to work and providing examples) and 20 C.F.R. § 404.15294(b)(3) (defining medical improvement related to the ability to work and providing examples). If there is medical improvement that is not related to the claimant's ability to perform work, the ALJ proceeds to step five. 20 C.F.R. § 404.1594(f)(4). If the medical improvement *is* related to the claimant's ability to perform work, the ALJ proceeds to step six. *Id.*

At step five, the ALJ determines whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions. *See* 20 C.F.R. § 404.1594(d) (first group of exceptions) and 20 C.F.R. § 404.1594(e) (second group of exceptions). If an exception from the first group (20 C.F.R. § 404.1594(d)) applies, the ALJ proceeds to step six. If an exception from the second group (20 C.F.R. § 404.1594(e)) applies, the claimant's disability ends. If no exceptions apply, the claimant's disability continues.

At step six, the ALJ determines whether all the claimant's current impairments, in combination, are severe. 20 C.F.R. § 404.1594(f)(6). If the ALJ finds that the combination of the claimant's current impairments are not severe, the claimant is no longer disabled. *Id.* If the ALJ finds that the combination of claimant's current impairments are severe, the ALJ proceeds to step seven. *Id.*

At step seven, the ALJ evaluates the claimant's residual functional capacity based on his or her current impairments to determine whether the claimant can engage in past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant can engage in his or her past relevant work, his or her disability has ended. If the claimant cannot engage in his or her past relevant work, the ALJ proceeds to step eight.

At step eight, the ALJ determines (based on claimant's age, education, work experience and RFC) whether the claimant can do other work. 20 C.F.R. § 404.1594(f)(8). If the claimant can engage in other work, he or she is not disabled. If he or she cannot engage in other work, the disability continues.

The ALJ's determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Page 9 of 23

IV.   DISCUSSION

Plaintiff raises the following single argument in his Brief:

Whether the job listings provided by the vocational expert are accurate for the limitations of Plaintiff and actually exist in the Dictionary of Occupational Titles.

(Doc. 11, p. 3).

A.   THE ALJ'S DECISION TERMINATING PLAINTIFF'S BENEFITS

In his November 2018 decision, the ALJ identified that the most recent favorable decision finding Plaintiff disabled (the "comparison point decision" or "CPD") was issued on July 8, 2014. (Admin. Tr. 17; Doc. 14-2, p. 18). As of the date the CPD was issued, Plaintiff had only one medically determinable impairment—depressive disorder. *Id.*

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity through November 15, 2018 (the date of his decision). *Id.*

At step two, the ALJ found that, since November 2016, Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine; tendonitis/rotator cuff tear/arthritis of the bilateral shoulders; and patellofemoral pain syndrome/mild osteoarthritis of the bilateral knees-left greater than right. *Id.* The ALJ also found that these impairments, individually or combined, did not meet or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At step three, the ALJ found that medical improvement occurred on November 1, 2016. (Admin. Tr. 18; Doc. 14-2, p. 19). The ALJ explained that impairment present at the time of the comparison point decision (depression) improved to the point where Plaintiff no longer had any severe mental impairment.

At step four, the ALJ found that the medical improvement in Plaintiff's depressive disorder was related to his ability to work because it had decreased in severity to a point where Plaintiff had the RFC to perform a limited range of unskilled sedentary work. (Admin. Tr. 19; Doc. 14-2, p. 20).

Step five was skipped because the ALJ found that Plaintiff's medical improvement was related to Plaintiff's ability to perform work. 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ found that, since November 1, 2016, Plaintiff continued to have a severe impairment or combination of impairments. *Id.* Specifically, the ALJ found that Plaintiff's "impairments of degenerative disc disease of the lumbar spine, tendinosis/rotator cuff tear/arthritis of the bilateral shoulders, and patellofemoral pain syndrome/mild osteoarthritis of the bilateral knees-left greater than right cause more than minimal limitation in the claimant's ability to perform basic work activities." *Id.*

At step seven, the ALJ evaluated Plaintiff's RFC based on all of his current medically determinable impairments identified at step two. He found that, since

November 1, 2016, Plaintiff had the RFC to perform sedentary work as defined in

20 C.F.R. § 404.1567(a) except:

> He can occasionally climb ramps and stairs, balance, stoop, kneel,
> crouch, and crawl. The claimant cannot climb ladders, ropes, and
> scaffolding. He can frequently reach in front and laterally and
> continuously handle, finger, and feel. The claimant cannot push and/or
> pull overhead arm controls or frequently work overhead. He cannot be
> exposed to extremes of temperatures, humidity or wetness, or heavy
> concentrations of dust, fumes, gases, and other environmental irritants.
> The claimant can understand, remember, and carry out simple
> instructions and make simple work-related decisions. He can have
> occasional contact with supervisors, co-workers, and the public. The
> claimant can respond appropriately to changes in simple, routine,
> repetitive job.

*Id.* Also at step seven, the ALJ found that Plaintiff could not engage in his past

relevant work as a police officer. (Admin. Tr. 23; Doc. 14-2, p. 24).

At step eight, the ALJ found that, considering Plaintiff's age, education and

work experience and current RFC, Plaintiff could engage in other work that existed

in the national economy. (Admin. Tr. 24; Doc. 25). To support his conclusion, the

ALJ relied on testimony given by a vocational expert during Plaintiff's

administrative hearing and cited the following three (3) representative occupations:

assembler (DOT #732.684-060); bench worker (DOT #713.687-026), and clerical

work (DOT #209.587-018). *Id.*

B.    WHETHER THE ALJ'S FINDINGS AT STEP EIGHT ARE SUPPORTED BY
      SUBSTANTIAL EVIDENCE

At step eight of the continuing disability review process, the ALJ considers "whether [the claimant] can do other work given the residual functional capacity assessment under paragraph (f)(7) of this section and [the claimant's] age, education, and past work experience." 20 C.F.R. § 404.1594(f)(8); *see also* 20 C.F.R. § 404.1594(b)(5) (stating that 20 C.F.R. § 404.1545 through 20 C.F.R. § 404.1569 apply to steps seven and eight of the continuing disability review process).

Step eight of the continuing disability review process is unique, as it is the only step where the government bears the burden of proof. *Hagans v. Comm'r of Soc. Sec.* 694 F.3d 287, 308 (3d Cir. 2012) (quoting *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). In most cases, this burden is met by relying on evidence from the two publications by the United States Department of Labor (The Dictionary of Occupational Titles; and, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles). These publications are often supplemented by testimony from a vocational expert. In 2000, the Social Security Administration published a policy ruling to clarify its standards for the use of vocational experts who provide evidence at ALJ hearings. SSR 00-4p, 2000 WL 1898704. This Ruling explains that:

> Occupational evidence provided by a [Vocational Expert] generally
> should be consistent with the occupational information supplied by the

[Dictionary of Occupational Titles]. When there is an apparent unresolved conflict between [Vocational Expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [Vocational Expert] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the [Dictionary of Occupational Titles] nor the [Vocational Expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [Vocational Expert] is reasonable and provides a basis for relying on the [Vocational Expert] testimony rather than on the [Dictionary of Occupational Titles] information.

SSR 00-4p, 2000 WL 1898704 at *2-3. Where there is an apparent, unresolved conflict about every occupation identified by a vocational expert, the ALJ's conclusion at the final step is not supported by substantial evidence. *Boone v. Barnhart*, 353 F.3d 203, 208 (3d Cir. 2003) (concluding that the VE's testimony did not constitute substantial evidence that the claimant could perform a significant number of jobs because "according to the DOT, [claimant could not] perform any of the occupations identified by the VE."); *cf. Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005) (concluding that an ALJ's decision was supported by substantial evidence where "inconsistencies [were] not present as to each of the jobs that the expert did list.").

During Plaintiff's administrative hearing, the following exchange between the ALJ and vocational expert (Carolyn Rutherford) took place:

Page 14 of 23

Q      Ms. Rutherford, let's assume at least at some point in time I could find that this hypothetical claimant from a physical or exertional standpoint would have an ability to occasionally lift and carry up to ten pounds, two to three pounds frequently, with normal breaks and lunch periods throughout the work day. He could sit for up to six of eight hours. Standing and walking, however, would be limited to two hours in those categories.

He could perform all postural activities such as climbing, balancing, stooping, kneeling, crouching, crawling at least occasionally throughout the work day. However, I do want to qualify what I mean by climbing. That does not mean he's going to be able to climb ladders or scaffolds. He can't do that. He can't work around unprotected heights, unprotected dangerous machinery, or be exposed to excessive vibrations. The climbing he could do would be climbing up a few steps if needed as part of his job duties or up and down a ramp.

The claimant also in terms of a harsh environment. He has a number of orthopedic impairments, so he can't work where he's exposed to extremes of temperature and humidity, especially cold and wetness, and can't work in heavy concentrations of fumes and gases.

The claimant because of his shoulder problems can't do any job that requires him to do frequent overhead work, especially pulling and pulling of controls. The hypothetical claimant, however, can do some frequent reaching, essentially front and laterally side to side. He could do handling, fingering and feeling of objects on a continuous basis.

Now the hypothetical claimant, like our claimant here today, was originally allowed for his mental health issues. He's made a recovery from those but he has been, I guess to use his terminology, somewhat stressed out over the process of being potentially ceased in terms of his benefits.

So let's assume that any work environment would be one that would be low stress. He can understand, remember, carry out

Page 15 of 23

simple instructions. He can make simple work-related decisions. He can have occasional contact with coworkers, supervisors and the public and respond appropriately.

Now in addition to being able to respond to the work situations I just outlined, he would also be able to respond appropriately to any changes that take place in a simple, routine, repetitive job.

With that overall vocational profile, obviously he can't go back to work as a police officer but would there be any other occupations you might suggest for that individual?

A   It would allow for a range of unskilled sedentary work. Examples, could include a range **of Assembly work at 350,000 nationally with a sample DOT 732.684-062.**

**Bench work positions at 85,000 nationally. A sample DOT is 713.687-026.**

**Unskilled Clerical work at 275,000 nationally with a sample DOT of 209.587-010.**

These are all SVPs of 2 and consistent as classified in the DOT.

(Admin. Tr. 49-51; Doc. 14-2, pp. 50-52) (emphasis added).

At step eight in his decision, the ALJ explained:

Since November 1, 2016, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent of erosion of the unskilled sedentary occupational base caused by these limitations, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity since November 1, 2016. **The vocational expert testified that given all of these factors the individual would be able to perform the**

> **requirements of representative occupations such as an assembler (DOT #732.684-060) (350,000 jobs in the national economy), a bench worker (DOT #713.687-026) (85,000 jobs in the national economy), and a clerical work (DOT #209.587-018) (275, 000 jobs in the national economy).**

(Admin. Tr. 24; Doc. 14-2, p. 25) (emphasis added).

Plaintiff argues:

A review of the Dictionary of Occupational Titles combine Volume 1 and 2, 4th Edition, revised 1991, in the current Dictionary of Occupational Titles and Use shows that D.O.T. 732.684-060 does not exist in the most recent volume of the Dictionary of Occupational Titles.

In addition, the lens inserter/bench worker job referred to at D.O.T. #713.687-026 is only a sample bench worker position and the numbers are minimal.

It further shows that the clerical worker job set forth at D.O.T. 209.587-018 is described as a direct-mail clerk (clerical). This job is a light job with an SVP or 4.

Hypothetical No. 1 posed by the Administrative Law Judge to the Vocational Expert was the Claimant was limited to lifting 10 pounds occasionally, 2-3 pounds frequently and that the job had to be low stress due to mental health concerns and simple work processes.

In fact, with the clerical worker job described at D.O.T. 209.587-018 being a light job, it would not fall within the hypothetical posed by the Administrative Law Judge. In addition, the job being an SVP of 4, it would be a semi-skilled job and violate these simple work processes limitation of the hypothetical posed by the Administrative Law Judge to the Vocational Expert.

This leaves only one job as a possible sample job in light of the fact that the assembler job cited as a sample job does not exist in the Dictionary of Occupational Titles and, further, the clerical worker job suggested as a sample job is, in fact, a light SVP of 4 job. The credibility of the

vocational expert is so diminished that it would be a reversible error for this Court to accept the job numbers of the bench worker position.

This is especially true in light of Finding of fact No. 7 set forth at the Judge' Decision in this case on Page 5 as follows:

"Since November 1, 2016, the impairment present at the time of the CPD had decreased in medical severity to the point where the Claimant had the residual functional capacity to perform a limited range of unskilled sedentary work.

In addition, Finding of Fact No. 11 set forth on Page 9 of the Judge's Decision to the effect "Since November 1, 2016, the Claimant has been unable to perform past relevant work".

This request is in line with *Heckler v. Campbell*, 103 Supreme Court 1952 (1983). in Heckler, the standard type of vocational expert testimony that must be produced in order to support a denial of disability. In the present case, and for the reasons stated, the vocational expert testimony is faulty and does not constitute sufficient ground to deny the Plaintiff ongoing Social Security Disability Benefits.

(Doc. 11, pp. 4-6).

In response, the Commissioner argues:

The ALJ in this case properly relied on the vocational expert's testimony that since November 1, 2016, Plaintiff could perform other work that exists in significant numbers in the national economy. The ALJ asked the vocational expert to assume an individual with Plaintiff's vocational profile who possessed the functional limitations in the RFC (Tr. 50-51). The vocational expert testified that this individual could not perform Plaintiff's past relevant work as a police officer, but could perform other work, "examples" of which included assembler, bench workers, and clerical workers (Tr. 51). As noted, the vocational expert testified that the bench worker occupation had at 85,680 jobs nationally, the clerical worker occupation had 275,000 jobs nationally, and the assembly work job had 350,000 jobs nationally (Tr. 51). Therefore, Plaintiff's objection to the reliance on the example of the bench assembler job because "the numbers are minimal" is meritless. *See* Pl.'s

Br. at 5. Indeed, all of the occupations identified by the vocational expert as suitable for the hypothetical individual exists in significant numbers. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (finding that 200 jobs in the region were a significant number of jobs).

There is also no merit to Plaintiff's claim that the ALJ could not rely on the example of assembler occupation, DOT # "732.684-060," because it did not exist in the latest edition of the DOT. *See* Pl.'s Br. at 4. Although the decision identifies this occupation as "assembler (DOT #732.684-060," (Tr. 24), the actual DOT number for the assembler occupation is 732.684-062. *See* DICOT 732.684-062 (G.P.O.), 1991 WL 679850 (Jan. 1, 2016) (4th ed.). The vocational expert, who provided the example of this representative occupation based on her expertise, identified the correct DOT number (Tr. 51). The ALJ permissibly relied on this testimony as substantial evidence in identifying the assembler occupation as suitable (Tr. 24). Remand to correct the typo in the ALJ's decision related to one digit in the DOT number would be futile and have no bearing on the ultimate continuing disability determination. *See Shinseki v. Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009) (recognizing that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). *see also Rutherford*, 399 F.3d 546 at 553 (holding that remand was not require where an error "would not affect the outcome of the case"); *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003) (finding harmless error where the ALJ's mistake "would have had no effect on the ALJ's decision").

Plaintiff also complains that the clerical worker job is inappropriate because the DOT categorizes it as light with Specific Vocational Preparation (SVP) of 4, which corresponds to semi-skilled work and, thus exceeds the hypothetical scenario. Pl's. Br. at 5. A review of the DOT confirms that this occupation is categorized at light and entails an SVP of 4. *See* DICOT 209.587-018 (G.P.O.), 1991 WL 671799. Even if this example were excluded, the representative occupations of assembler and bench worker remain suitable and, as discussed above, exist in significant numbers in the national economy. Therefore, the Commissioner still satisfied his burden to produce evidence of other work that Plaintiff could have performed since November 1, 2016.

(Doc. 12, pp. 12-15).

The parties do not appear to dispute that there is an unresolved conflict between the VE's testimony and DOT as to the clerical work position (DOT #209.587-018). The clerical work position is "light" rather than "sedentary." However, there appears to be a typographical error in the ALJ's decision as to the DOT title number for this position. At the hearing, the VE identified the position of "clerical work" and cited to DOT #209.587-010 *not* the number cited by the ALJ (ending in 018). The clerical work position identified by the VE at the hearing is sedentary work with an SVP of 2. There is no conflict between the VE's testimony that an individual with Plaintiff's RFC could do this job and the occupational data in the Dictionary of Occupational Titles. However, even excluding this position, there is evidence in the record of a significant number of jobs that an individual with Plaintiff's RFC and vocational profile could do.

Plaintiff's remaining contentions are two-fold. First, he argues that, like the clerical position, the assembler position does not support the ALJ's conclusion because this occupation is not contained in the Dictionary of Occupational Titles. Second, he argues that the last, and only, reliable occupation (bench worker) does not exist in "significant numbers.

With respect to Plaintiff's first argument, I am not persuaded. Plaintiff is correct that the DOT number cited by the ALJ in his decision for "assembler" is

Page 20 of 23

incorrect and does not appear in the Dictionary of Occupational Titles. However, the VE identified the correct number—732.684-062 (fishing reel assembler)—during the administrative hearing. DICOT 732.684-062, 1991 WL 679850. The Dictionary of Occupational Titles identifies this occupation as sedentary work with an SVP of 2. *Id.*; *see also* DICOT Appendix C, 1991 WL 688702 (defining SVP of 2 as a position that requires no more than one month of training); 20 C.F.R. § 404.1568 (defining unskilled work as a position that can be learned in 30 days); SSR 00-4p, 2000 WL 1898704 (explaining that a position with an SVP of 1 or 2 corresponds with unskilled work). Given that the assembler position was correctly identified by the VE during the hearing, and that the DOT entry for this position is consistent with the ALJs RFC assessment, there is no substantial doubt that, if this case were remanded, the ALJ would still rely on it. Therefore, I am not persuaded that the typo in the ALJ's decision (listing the wrong DOT title number) makes this position unreliable. Thus, having found that the record includes two occupations that are consistent with the ALJ's RFC assessment, I now consider whether these occupations demonstrate the existence of a "significant number" of jobs.

Under the Commissioner's regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [his or he] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). "Isolated

Page 21 of 23

jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" *Id.* However, there is no bright line rule as to the number of jobs are "significant." Neither Plaintiff nor the Commissioner have cited any authority on this issue. Courts have held that jobs in the national economy numbering in the low thousands is not a "significant number." *Alvarez v. Berryhill*, No. 1:16-CV-00707, 2017 WL 1709400, at *7-8 (M.D. Pa. May 3, 2017) (finding that 2,077 chaperone jobs in the national economy was not a significant number). Courts have found that 20,000 jobs or more is enough. *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (finding that 20,000 jobs is a significant number); *Brininger v. Berryhill*, No. 3:16-CV-00903, 2017 WL 3634187 at *15 (M.D. Pa. Aug. 7, 2017) (finding that 74,470 jobs is enough).

In this case, the VE identified two occupations which are consistent with the RFC assessed and that do not conflict with the Dictionary of Occupational Titles: assembler (DOT #732.684-062), and bench worker (713.687-026). The VE testified that there are 350,000 assembler positions in the national economy and 85,000 bench worker positions in the national economy. I am not persuaded by Plaintiff's argument that remand is required because the ALJ did not identify a significant number of jobs.

V.    CONCLUSION

IT IS ORDERED that Plaintiff's request for reversal of the ALJ's decision, or

in the alternative, remand this matter for a new administrative hearing is DENIED

as follows:

(1)    The final decision of the Commissioner is AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner of Social
Security.

(3)    An appropriate order shall issue.

Date: January 21, 2021                            BY THE COURT

                                                  *s/William I. Arbuckle*
                                                  William I. Arbuckle
                                                  U.S. Magistrate Judge